TEXTILE BANKING COMPANY, INC.,
Plaintiff-Appellee,

v.

William H. RENTSCHLER, Defendant.

Appeal of Sarah Y. Rentschler
MITTENDORF,
Citation-Respondent-Appellant.

No. 80–1826.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1981.

Decided April 17, 1981.*

* This appeal was originally decided by unreported order on April 17, 1981. *See* Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

Joseph D. Keenan, III, Puchalski, Keenan & Puchalski, Chicago, Ill., for citation-respondent-appellant.

Michael L. Weissman, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Circuit Judge, MARKEY, Chief Judge,** and CUDAHY, Circuit Judge.

CUDAHY, Circuit Judge.

Citation-Respondent Sarah Y. Rentschler Mittendorf ("Sarah") appeals from the district court's entry of a default judgment order against her in supplementary proceedings to satisfy a judgment entered against her father, William H. Rentschler ("William"). Sarah also seeks review of the district court's denial of her motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to vacate the default judgment order.

The district court entered the judgment in question here on April 30, 1980 ("April 30 Judgment Order"), after Sarah had failed to appear in Chicago on March 13, 1979, pursuant to a citation to discover assets and also failed to appear before the district court on April 30, 1980, to respond to plaintiff's subsequent motion to compel Sarah to execute a conveyance of real property and assign a promissory note. Sarah finally appeared, through counsel, on May 9, 1980, but her ensuing motion to set aside the April 30 Judgment Order was denied. This appeal was instituted on June 16, 1980. Because we find that Sarah's appeal of the April 30 Judgment Order was not timely filed, we have no jurisdiction to review the merits of that order. We have, however, reviewed the district court's denial of Sarah's Rule 60(b) motion to vacate the April 30 Judgment Order and we affirm.

I.

These supplementary proceedings arose out of an action commenced by plaintiff Textile Banking Company, Inc. ("Textile") against William Rentschler in August 1973. When William failed either to answer or appear, the district court entered a default judgment against him in the amount of $79,265.61. Since William was preoccupied with several other legal problems at that time, Textile postponed any enforcement action for approximately five years.

In December 1978, Textile finally decided to collect the judgment and served William with a citation to discover assets. During the course of the citation examination, counsel for Textile inquired about the ownership of the home at 361 Cherokee Road, Lake Forest, Illinois, in which William and his family were living. Textile suspected that William had fraudulently conveyed the property to his oldest daughter, Sarah, and that William, who was still using and treating the property as his own, was the real owner.

As a result, a citation to discover assets was issued against Sarah on February 16, 1979, and was personally served upon her at her residence in New York. Textile then filed a motion requesting that Sarah's cita-

** The Honorable Howard T. Markey, Chief Judge of the United States of Customs and Patent Appeals, is sitting by designation.

tion examination be conducted on February 23, 1979, "in the form and manner of a deposition" at the office of Textile's counsel in Chicago. The district court, referring to the citation as a "subpoena," denied the motion, holding that under Rule 45(d)(2) of the Federal Rules of Civil Procedure the court could not compel Sarah, a New York resident, to come to Chicago for the examination. The court suggested, however, that counsel for William attempt to work out an agreement whereby the examination would be conducted in New York or whereby Textile would reimburse Sarah for the cost of travel to Chicago. Although William's counsel indicated that he had no authority to enter into such an agreement because he did not represent Sarah, William's counsel did attempt to comply with the request. On March 1, 1979, counsel informed the court that Textile had agreed to furnish round-trip air fare for Sarah in return for her appearance in Chicago on March 13, 1979, for the citation examination. The court acknowledged this agreement in a separate order.

Sarah never arrived in Chicago on March 13th, however, and the reason for her failure to appear is in dispute. Textile claims that it was unable to determine in advance how Sarah wished to have the logistics of the trip handled. Sarah argues that Textile did not furnish the plane ticket in time for her to make the necessary arrangements. In either case, Textile was notified that Sarah was unavailable on March 13th and would appear, instead, on March 16th. When Sarah arrived three days later, counsel for Textile, in court for an evidentiary hearing in the instant case, refused to depose her.

On March 19, 1979, Textile filed a motion to compel Sarah to execute a conveyance of the Cherokee Road property. This motion was based on the proposition that Sarah's failure to comply with the citation to discover assets constituted a default, and by such default, Sarah admitted that the Cherokee Road property was an asset of the judgment debtor, William Rentschler. The court conducted an extensive eight-day hearing on the ownership of the Cherokee Road property. Sarah, who was never personally served with a copy of the motion and was never provided with notice of the hearing, did not appear. Counsel for William was present, however, and despite his insistence that he did not represent Sarah, was allowed to participate fully in the proceedings "in the interest of absolute fairness and in view of the gravity of the charges." At the conclusion of the hearing, the court asked the parties to submit appropriate legal memoranda, but no formal findings of fact on the merits were ever issued by Judge Hoffman with respect to this property.

On May 29, 1979, Textile filed a motion to compel Sarah to assign a promissory note, executed by MoPed American, Inc., ("MoPed") and payable to her in the amount of $19,134.88. Textile claimed that the note stemmed from monies Sarah lent to MoPed out of the proceeds of a mortgage loan on the property occupied and used by William. Since the property was really one of William's assets, Textile reasoned that the MoPed note should also be considered as such. A copy of this motion was mailed to Sarah but was not personally served upon her.

Nine months later, on March 26, 1980, the district court denied both Textile's motion to compel conveyance of the Cherokee Road property and its motion for assignment of the promissory note. The court noted that service of the citation summons on Sarah gave the court proper jurisdiction over her, but Judge Hoffman concluded that Textile's motions (for conveyance and assignment) represented requests for new or additional relief and should have been personally served on Sarah. Since Sarah had not been given notice in the proper manner on either motion, no valid order could be entered.

On April 30, 1980, Textile filed a second motion to compel Sarah to execute a conveyance of the Cherokee Road property and to assign the promissory note. Although notice of this motion had been personally served on Sarah on April 18, 1980, she failed

to appear on April 30, 1980, either personally or through counsel. The court heard and granted Textile's new motion. No supplemental evidence was received apparently because the denial of Textile's previous motion on March 26, 1980, was due not to a lack of proof but to Textile's failure to serve proper notice. Judge Hoffman entered a default judgment order which required Sarah to execute a warranty deed to the Cherokee Road property and deliver it to the U.S. Marshal for the purpose of judicial sale before May 10, 1980. Sarah was also ordered to endorse and deliver the MoPed note to Textile within the same period.

A copy of the April 30 Judgment Order was served upon Sarah by certified mail on May 5, 1980. Four days later, counsel for Sarah filed an appearance on her behalf and delivered to Textile's counsel a motion seeking: (1) additional time to file a motion to vacate the April 30 Judgment Order and (2) a stay of execution of the judgment until May 19, 1980. Sarah then filed her motion pursuant to Federal Rule 60(b) to vacate the April 30 Judgment Order. A hearing was conducted on June 5, 1980, and the motion was denied.

Sarah filed a notice of appeal with the district court on June 16, 1980, seeking review of both the April 30 Judgment Order and the trial court's denial of her Rule 60(b) motion. Textile responded with a motion to strike that portion of the appeal which sought review of the April 30 Judgment Order on the grounds that it was untimely filed. This court subsequently decided that the motion to strike would be taken with the case. When Sarah's motion to stay execution of the judgment without bond pending appeal was denied on July 15, 1980, Sarah delivered to Textile a special warranty deed to the Cherokee Road property and an assignment of her interest in the MoPed note.

## DISCUSSION

### I.

■ After examining the circumstances surrounding the post-judgment motions in this case, we conclude that we have no jurisdiction to review the April 30 Judgment Order because the notice of appeal was not timely filed. Rule 4(a) of the Federal Rules of Appellate Procedure ("FRAP") provides that the notice of appeal in a civil case must be filed by a party other than the United States, or an officer or agency thereof, within 30 days of the date of entry of the judgment or order appealed from. Although the 30-day appeal period may be tolled by a timely motion filed pursuant to Rule 50(b), 52(b) or 59 of the Federal Rules of Civil Procedure ("FRCP"), the applicable time limitations are not suspended by a motion to vacate the judgment pursuant to Rule 60(b).

■ In the instant case, Sarah filed a notice of appeal on June 16, 1980, seeking review of both the April 30 Judgment Order and the denial on June 5, 1980, of her Rule 60(b) motion to vacate that order. But the time for filing an appeal of the April 30 Judgment Order expired on May 30, 1980, and Sarah's interim efforts to persuade the district court to vacate the judgment did not toll the 30-day appeal period. As a result, Sarah's notice of appeal is timely only as to the June 5 denial of her Rule 60(b) motion.

■ Sarah argues, however, that her May 9 motion for additional time to file a motion to vacate the April 30 Judgment Order should be treated as a Rule 59(e) motion to alter or amend the judgment. When a Rule 59(e) motion is filed within 10 days of the district court's final judgment in the case and fully sets forth the grounds for the relief requested, the 30-day appeal period is suspended pending the outcome of the Rule 59(e) proceedings. Although Sarah admits that her May 9 motion was filed pursuant to Rule 60(b), she claims that the May 9 motion is the functional equivalent of a Rule 59(e) motion because it questions the correctness of the April 30 Judgment Order. *See Dove v. Codesco*, 569 F.2d 807 (4th Cir. 1978).

We believe that Sarah's May 9 motion, even under the most generous characterization, fails to qualify as a Rule 59(e) motion. The document does not propose an alteration or amendment of the April 30 Judgment Order and states no grounds upon which this type of relief could be granted. *See Martinez v. Trainor*, 556 F.2d 818 (7th Cir. 1977). Contrary to the claims of Sarah's counsel, the motion does not question the district court's jurisdiction or the constitutional validity of the April 30 Judgment Order pending further proceedings.[1]

Sarah's contention that the May 9 motion sought an extension of time in which to file a Rule 59(e) motion is similarly without merit. It is well-settled that the district court lacks the power to extend the 10-day filing deadline imposed on Rule 59(e) motions. *United States v. Hall*, 463 F.Supp. 787 (W.D.Mo.), *aff'd*, 588 F.2d 1214 (8th Cir. 1978); *Pacific Coast Medical Enterprises v. Califano*, 440 F.Supp. 296 (D.C.Cal.1977), *modified on other grounds*, 633 F.2d 123 (9th Cir. 1980); *Gilroy v. Erie-Lackawanna R. R.*, 44 F.R.D. 3 (D.C.N.Y.1968); *Hulson v. Atchison, T. & S. F. R. R.*, 27 F.R.D. 280 (N.D.Ill.1960), *aff'd in part, dismissed in part*, 289 F.2d 726 (7th Cir.), *cert. denied*, 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36 (1961).

Finally, Sarah complains that the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure make it almost impossible for a party to seek relief from a default judgment order in the district court and to preserve the right to appeal from the judgment itself at a later date. FRCP Rule 55(c) directs a party seeking relief from a default judgment order to file a Rule 60(b) motion to vacate the judgment in the district court. Since Rule 60(b) motions do not toll the deadline for filing an appeal, the party must also file a notice of appeal in the district court within 30 days of the entry of the default judgment order. According to Sarah, once the appeal is filed, the district court loses jurisdiction of the Rule 60(b) motion, even though the motion was filed prior to the notice of appeal. Consequently, Sarah argues that a person seeking relief from a default judgment order must either abandon the right to appeal the order or abandon the right to seek relief in the district court. Sarah suggests that the only way to avoid the inequity inherent in this situation is to regard a Rule 60(b) motion filed within 10 days of the default judgment order as a Rule 59(e) motion which tolls the 30-day appeals period.

The problem which Sarah presents to us has been successfully resolved by this court and others without upsetting the structure or disturbing the harmony of the federal rules. Until recently, most circuits adhered to the view that the district court lost jurisdiction of a Rule 60(b) motion once a notice of appeal had been filed. *See* 11 Wright & Miller, Federal Practice and Procedure § 2873 at 263–65 (1973). Persistent parties could then present the Rule 60(b) motion to the appellate court and, in appropriate cases, obtain an order remanding the case to the district court for relief.

A majority of the circuits have abandoned this costly and time-consuming procedure, however, in favor of one which allows the district court to consider and deny Rule 60(b) motions during the pendency of an appeal without leave from the appellate court. A remand is only necessary if the district court is inclined to grant the relief.[2]

---

1. The motion sought additional time in which to file a motion to vacate the April 30 Judgment Order. The court never granted this request, however, because an extension of time was not needed to permit Sarah to file a Rule 60(b) motion.

2. The Court of Appeals for the First Circuit explained the procedure in *Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39, 42 (1st Cir. 1979):

> when an appeal is pending from a final judgment, parties may file Rule 60(b) motions directly in the district court without seeking prior leave from us. The district court is directed to review such motions expeditiously, within a few days of their filing, and quickly deny those which appear to be without merit, bearing in mind that any delay in ruling could delay the pending appeal. If the district court is inclined to grant the motion,

*Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39 (1st Cir. 1979); *Pioneer Ins. Co. v. Gelt*, 558 F.2d 1303 (8th Cir. 1977); *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928 (5th Cir. 1976); *First Nat. Bank v. Hirsch*, 535 F.2d 343 (6th Cir. 1976); *Washington v. Bd. of Education*, 498 F.2d 11 (7th Cir. 1974); *Salsbury v. United States*, 123 U.S.App.D.C. 69, 356 F.2d 822 (D.C.Cir.1966); *Aune v. Reynders*, 344 F.2d 835 (10th Cir. 1965) (*but see Norman v. Young*, 422 F.2d 470 (10th Cir. 1970)). This mode of procedure has enabled litigants to pursue Rule 60(b) relief in the district court without running afoul of the 30-day deadline for filing a notice of appeal.

In the instant case, the 30-day period for filing an appeal of the April 30 Judgment Order expired on May 30, 1980. Sarah's counsel did not ask the district court for an extension of the period within which to appeal, and we conclude that Sarah's May 9 motion failed to toll the filing deadline. As a result, the notice of appeal filed on June 16, 1980, was untimely as to the April 30 Judgment Order and confers jurisdiction on this court to review only the June 5 denial of Sarah's Rule 60(b) motion.

## II.

■■■ A motion to vacate a default judgment order pursuant to FRCP Rule 60(b) is addressed to the sound discretion of the trial judge unless the district court was powerless to enter the judgment in the first instance. If the underlying judgment is void because the court lacked personal or subject matter jurisdiction or because the entry of the order violated the due process rights of the respondent, the trial judge has no discretion and must grant appropriate Rule 60(b) relief. *In re Four Seasons Securities Law Litigation*, 502 F.2d 834 (10th Cir.), *cert. denied*, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974). Therefore, the sole function of this court in reviewing the denial of a Rule 60(b) motion to vacate a default judgment order is to determine whether the district court failed to set aside a void judgment or abused its discretion. *See Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *De Filippis v. United States*, 567 F.2d 341 (7th Cir. 1977).

### A. The Jurisdictional Issue

A thorough examination of the rules governing the enforcement of judgments supports the conclusion that the district court properly acquired the jurisdiction to enter the April 30 Judgment Order against Sarah. FRCP Rule 69(a) provides that "the procedure on execution [of a judgment] and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, . . . except that any statute of the United States governs to the extent that it is applicable." Since there is no federal statute prescribing methods for discovering the hidden assets of a judgment debtor, the district court properly applied state law to the instant case.

Illinois has a statutory citation procedure which enables a judgment creditor to discover the assets of a recalcitrant judgment debtor and to compel the application of those assets toward satisfaction of the outstanding judgment. *See* Ill.Rev.Stat. ch. 110, § 73 (1979). The clerk of the court may issue a citation to discover assets against "the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor." Ill.Sup.Ct.R. 277(a), Ill.Rev.Stat. ch. 110A, § 277(a) (1979). The citation directs the party to appear before the court and answer questions with respect to the assets or indebtedness of the judgment debtor. Failure to comply with a citation to discover assets is punishable by contempt and may subject the party to a judgment for the amount unpaid.

In this appeal, Sarah asserts that the issuance of a citation to discover assets is a form of general discovery and is tanta-

---

it should issue a brief memorandum so indicating. Armed with this, movant may then request this court to remand the action so

that the district court can vacate judgment and proceed with the action accordingly.

mount to a deposition subpoena. Consequently, Sarah argues that the discovery provisions of the Federal Rules of Civil Procedure pre-empt state law on this subject in accordance with FRCP Rule 69(a). The federal rule governing deposition subpoenas states, "a non-resident of the district may be required to attend only in the county wherein he is served with a subpoena or within 40 miles from the place of service or at such other convenient place as is fixed by an order of the court." Fed.R.Civ.P. 45(d)(2). In the absence of a court order fixing Chicago as a "convenient place" for her deposition, Sarah claims that the Illinois district court had no authority to issue a citation requiring her to appear in Chicago. Thus, Sarah concludes that the citation was without legal effect and could not give the district court personal jurisdiction over her.

■ We find Sarah's argument unpersuasive. FRCP Rule 69(a) subordinates state supplementary procedure only when there is a federal statute fulfilling a comparable function. *Hartmann v. United States*, 79 F.R.D. 705 (E.D.Wis.1978); *Mission Bay Campland, Inc. v. Sumner Financial Corp.*, 71 F.R.D. 432 (M.D.Fla.1976). The citation procedure set forth under Illinois law contemplates more than merely the discovery of the assets of the judgment debtor. The statute also provides that the judgment creditor is "entitled to ... compel the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment or decree." Ill.Rev.Stat. ch. 110, § 73 (1979).

*See also Cochran v. Howell*, 46 Ill.App.2d 304, 197 N.E.2d 87 (1964); *Hamilton v. Country Club Properties*, 320 Ill.App. 688, 51 N.E.2d 1008 (1943). This additional remedial aspect distinguishes the citation procedure from a general discovery proceeding and suggests that Sarah's characterization of the citation as a deposition subpoena is inaccurate.

■ We believe that a citation to discover assets is more appropriately considered a document in the nature of a summons. Service of the citation commences the supplementary proceeding in the same manner that service of a summons commences an ordinary civil action. The citation, like a summons, commands the party served to appear before the court in regard to the specified cause. Although the judgment creditor may elect to conduct all or part of the citation examination hearing by deposition, this provision appears to be more for the convenience of the parties and does not go to the nature of the citation proceeding itself. *See* Ill.Rev.Stat. ch. 110A, § 277(e) (1979). As a result, FRCP Rule 45(d)(2) governing the service of deposition subpoenas is inapplicable to the service of a citation summons and does not displace Illinois law in the instant case.

We do not believe that the district court's reference to FRCP Rule 45(d)(2) in its February 23, 1979, order denying Textile's motion to conduct Sarah's citation examination in its Chicago office requires this court to reach a different result.[3] Illinois law does not restrict the issuance of a citation to

---

**3.** Nor did the February 23, 1979, order of the district court with respect to FRCP Rule 45(d)(2) establish the "law of the case" so as to release Sarah from any duty to respond to the citation. This order of the district court merely denied Textile's motion to hold Sarah's citation examination at the offices of Textile's counsel in Chicago and to conduct the examination as if it were a deposition. The order did not dismiss the proceeding—a result which would have been required if Sarah were to be relieved of any further obligation to respond to the citation. Whatever doubts the trial court expressed about its power to compel Sarah to physically appear at a citation proceeding held in Chicago, while potentially affecting the location and nature of the citation examination, did

not disturb the court's personal jurisdiction over Sarah. Personal jurisdiction was properly obtained upon service of the citation summons. Sarah's decision to appear for examination in Chicago several weeks later indicates that, even after the February 23, 1979 order, she believed that she had some obligation to respond to the citation summons. Any subsequent reliance she might have placed upon her own (or her counsel's) erroneous interpretation of the court's February 23, 1979 order would have been unfortunate. But such misplaced reliance would not be sufficient to relieve her of the obligations which she essentially knew the summons placed upon her and which she continually sought to avoid.

discover assets to Illinois residents. Anyone the judgment creditor "believes has property of or is indebted to the judgment debtor" is subject to examination under this procedure. Ill.Sup.Ct.R. 277(a), Ill.Rev. Stat. ch. 110A, § 277(a) (1979). Textile alleged that there was a strong likelihood that William was the true owner of the Cherokee Road property even though the title was in Sarah's name. Since the property was located within its judicial district, the district court had jurisdiction over Sarah, the property's titleholder of record. Ill. Rev.Stat. ch. 110, § 17(c) (1979). That jurisdiction was invoked by personal service of the citation upon Sarah on February 16, 1979, and the district court subsequently recognized its jurisdiction pursuant to state law in both a memorandum opinion dated March 26, 1980, and in the June 5 order denying Sarah's Rule 60(b) motion.

Finally, Sarah argues that the April 30 Judgment Order is void because it was entered after the statutory termination of the citation proceedings. Under Illinois law, a citation proceeding "continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically six months from the date of (1) the respondent's first personal appearance pursuant to the citation . . . ." Ill.Rev.Stat. ch. 110, § 277(f) (1979). Sarah claims that her trip to Chicago on March 16, 1979, constituted an "appearance pursuant to the citation" and triggered the running of the limitation period. Thus, Sarah reasons that, even if the district court obtained jurisdiction upon service of the citation, that jurisdiction was lost when the proceeding automatically terminated on September 16, 1979, six months after her appearance in Chicago.

 We agree with the district court that Sarah's belated arrival in Chicago on March 16, 1979, did not constitute an appearance sufficient to invoke the six-month limitation on citation proceedings. A citation to discover assets directs a party to present himself before the court on a specified day for an examination concerning the property or indebtedness of the judgment debtor. The appearance contemplated by this statute is clearly more than mere physical presence within the judicial district. Illinois law requires the party to appear "in person or by attorney at the time and place specified in the summons and [to] mak[e] the appearance known to the court, or before the time specified for appearance [to file] a written appearance, answer or motion, in person or by attorney." Ill.Rev. Stat. ch. 110A, § 181(b) (1979). In the instant case, Sarah made no attempt to appear before the court either in person or through counsel during her visit to Chicago, despite the fact that the court was conducting hearings on the ownership of the Cherokee Road property at that time. Contrary to Sarah's claims, Textile's refusal to depose her on March 16 did not relieve her of the obligation to present herself to the court in compliance with the citation. Therefore, Sarah's failure to inform the court of her presence negates any argument that her Chicago trip represented a statutory appearance pursuant to the citation and invoked the limitation period.

After examining all of Sarah's arguments we remain unconvinced that the district court lacked jurisdiction to enter the April 30 Judgment Order. The Federal Rules of Civil Procedure directed the district court to apply Illinois law in this case. Under the state citation procedure, the district court properly acquired jurisdiction over Sarah, the record owner of property within the judicial district, when she was personally served with the citation on February 16, 1979. Therefore, the district court did not err in denying Sarah's Rule 60(b) motion on the grounds that the April 30 Judgment Order was void for lack of jurisdiction.

**B. The Due Process Issue**

Once the citation examination has been completed, or as in this case, the citation respondent defaults, the judgment creditor may file a petition or motion seeking affirmative relief. Ill.Rev.Stat. ch. 110, § 73(2) (1979). The citation respondent and any other adverse claimants are then given the opportunity to defend their interest in

the property or assets in question. The rights of the parties at this stage of the citation proceeding are determined by the law governing garnishment actions. Ill. Rev.Stat. ch. 110, § 73(5) (1979).

Sarah claims that the district court, while acknowledging the applicability of garnishment law, proceeded to disregard her rights under the Illinois Garnishment Act. *See* Ill.Rev.Stat. ch. 62, § 33 *et seq.* (1979). Specifically, Sarah complains that she was not afforded sufficient time to respond to Textile's motion of April 30, 1980, to compel conveyance of the Cherokee Road property and assignment of the MoPed promissory note. She also argues that her failure to appear at the hearing on this motion empowered the district court to enter only a conditional judgment against her and that further proceedings are necessary before that judgment becomes final. Thus Sarah concludes that the April 30 Judgment Order is void because it violated her right to due process.

■ At the outset, we note that Sarah failed to present either of these claims to the district court and admits the omission in her brief in this court. Citation-Respondent's Br. at 27. It is axiomatic that issues and arguments which were not raised before the district court cannot be raised for the first time on appeal. *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Wagner v. United States*, 573 F.2d 447 (7th Cir. 1978). Therefore, Sarah has waived any objection to the district court's interpretation of Illinois garnishment law and its alleged failure to accord her due process.

■ Sarah points out that in rare cases this court may consider a matter which was not raised before the court below if the issue involves a jurisdictional question or if justice demands flexibility. *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). The circumstances of this case, however, do not appear to warrant extraordinary consideration. Sarah's due process arguments do not go to jurisdiction, and we cannot say that under the peculiar circumstances present here justice demands our review of these claims. Sarah had been aware of the conduct of these supplementary proceedings for more than a year before she was served with Textile's motion to compel conveyance of the Cherokee Road property and assignment of the MoPed note. At no time during the period did she apparently contact an attorney or choose to make an appearance in the district court. Although Sarah was given ample time and opportunity to submit, if she wished, to the process of the court, she apparently chose continually to evade it. Under these circumstances, we do not believe her claims are entitled to extraordinary consideration.

■ Even if Sarah had not waived these claims, we are not persuaded that her due process rights were violated. Although the Illinois Garnishment Act provides that a summons may not be returnable less than 21 days after the date of *issuance*, Illinois law also indicates that the summons is valid as long as *service* occurs more than 10 days prior to the return date. Ill.Rev.Stat. ch. 62, § 36 (1979). In the instant case, Sarah was served with Textile's motion to compel on April 18, 1980, more than 10 days prior to the April 30 return date. She thus had 12 days actual notice—two days more than the minimum prescribed by Illinois law.

■ Sarah's conditional judgment claims are similarly without merit. The statute governing citation proceedings directs that the rights of the cited party or an adverse claimant "shall be asserted and determined pursuant to the law relating to garnishment proceedings." Ill.Rev.Stat. ch. 110, § 73(5) (1979). The relief afforded to the judgment creditor, however, is prescribed by the citation statute which empowers the court to "compel any person cited to execute an assignment of any chose in action or a conveyance of title to real or personal property...." Ill.Rev.Stat. ch. 110, § 73(2)(e) (1979). Thus, the entry of the April 30 Judgment Order was well within the power of the district court, and did not violate Sarah's due process rights.

■ Since Sarah has failed to establish that the April 30 Judgment Order was void on either jurisdictional or due process grounds, her Rule 60(b) motion was addressed to the sound discretion of the trial court. While it is true that default judgments are not favored, the liberal attitude toward vacating such judgments is sharply modified when the defaulting party's actions appear to be wilful. *United States v. An Undetermined Quantity of an Article of Drug Labeled as Benlyin Cough Syrup*, 583 F.2d 942 (7th Cir. 1978). Because the record is replete with evidence to support the conclusion that Sarah consciously chose not to appear,[4] we conclude that it was not an abuse of the district court's discretion to deny her motion to vacate the April 30 Judgment Order.

### III.

Finally, Sarah has filed a motion with this court to compel Textile to place the Cherokee Road property on the market for immediate sale. Under the terms of the April 30 Judgment Order, Sarah was required to execute a warranty deed for the Cherokee Road property to the U. S. Marshal for purposes of a judicial sale by May 10, 1980. The district court granted a temporary stay of execution pending the resolution of Sarah's Rule 60(b) motion to set aside the default judgment order which was denied on June 5, 1980. Subsequent motions in this court and the district court to stay enforcement of the April 30 Judgment Order pending appeal were denied. Because Sarah believed that the sale price of the property would be greater if it were sold on the open market than at a judicial

sale, Sarah conveyed title to the property directly to Textile pursuant to an agreed order entered by the district court on July 25, 1980. The order required Textile to maximize the proceeds from the sale, and it was Sarah's understanding that Textile would immediately place the property on the market.

Although Textile has held title to the property for almost 9 months, the property remains vacant and unlisted. Sarah's repeated requests for information on the progress of the sale have apparently been rebuffed or ignored. In the meantime, principal and interest payments on the mortgage held by the Midwest Bank of Lake Forest continue to accrue, and the owner's equity in the property diminishes at the rate of approximately $1,000 per month. Textile claims that it is waiting for a better market in which to sell the home, but how long that wait might be is very uncertain.

■ We agree with Sarah that in order to maximize the proceeds from the sale of the property in accordance with the mandate of the July 25, 1980 order, the property should be placed on the market without undue delay. But Sarah's motion to compel Textile to place the property on the market must be denied because it is beyond the scope of the appeal before us. We have no jurisdiction to review the merits of the April 30 Judgment Order and therefore have no jurisdiction to interpret the terms of an order enforcing the April 30 Judgment Order. *See Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252 (3d Cir. 1977). We emphasize, however, that Textile's failure to place the property on the market for

4. Sarah insists that her failure to appear on April 30, 1980, was excusable. She is the sole owner of a small art gallery in New York and had scheduled the opening of a new exhibit for May 1, 1980. Several of the pieces to be displayed at the exhibit were due to arrive from London on April 30, the same day she was ordered to respond to plaintiff's motion. Sarah claims that it was impossible for her to leave her business in New York because her only part-time employee was absent on maternity leave.

We are not persuaded, however, that Sarah's business concerns justify her failure to appear.

Sarah did not have to personally attend the April 30 hearing in Chicago in order to defend against Textile's motion. All she had to do was retain counsel to file an appearance on her behalf and either defend the claim or challenge the court's jurisdiction. Since Sarah based her request for Rule 60(b) relief on grounds of excusable neglect to appear, and we find against her on this claim, it is inappropriate to review Sarah's argument that she had a legitimate defense on the merits. *See De Chahert v. Wheatley*, 392 F.Supp. 62 (D.V.I.1975).

immediate sale raises serious questions regarding Textile's compliance with the agreed order of July 25, 1980. The district court may wish to resolve these questions if presented with an appropriate motion at the termination of this appeal.

Sarah's motion to compel Textile to place the Cherokee Road property on the market for immediate sale is accordingly denied. The district court's denial of Sarah's Rule 60(b) motion to vacate the April 30 Judgment Order is affirmed.